STATE of Tennessee, Appellee,

v.

Leonard Levester MOSLEY, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 17, 1983.

Permission to Appeal Denied by Supreme Court March 5, 1984.

A.C. Wharton, Jr., Shelby Co. Public Defender, Joe B. Jones, Donna Fields, James Wax, Asst. Public Defenders, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Raymond S. Leathers, Asst. Atty. Gen., Nashville, Phillip Gerald Harris, Asst. Dist. Atty., Memphis, for appellee.

## OPINION

TATUM, Judge.

The defendant, Leonard Levester Mosley, was convicted of armed robbery and assault with intent to commit first degree murder. He was sentenced to a term of 10 years in the State penitentiary for the armed robbery conviction, and to a term of 20 years for the assault with intent to commit first degree murder conviction. These sentences were ordered to run consecutively. On this appeal, the defendant attacks the sufficiency of the evidence and the reliability of a photographic identification of him by two State's witnesses. He also says the trial court erred in refusing to permit his attorney to cross-examine a State witness concerning the reasons she was discharged from her employer; that the court erred in holding that the defendant could be cross-examined concerning a prior conviction for armed robbery; and, that the court erred in ordering the sentences to be served consecutively. We find no reversible error and affirm the judgment of both convictions.

We first address the issue attacking the sufficiency of the evidence. The facts established by the State's proof are succinctly and accurately stated in the defendant's brief, from which we quote:

"On the 28th day of January, 1982, at approximately 9:30 P.M., the 7–11 convenience store, located at 2731 Ketchum, Memphis, Tennessee, was robbed by a lone gunman. The person responsible for the robbery entered the store, walked across the front of the building, returned to the opposite side of the building through an aisleway, and approached the check-out or sales counter with a gun in one hand and his other hand over his face. He instructed the clerk to 'give me the money.' When an off-duty security officer, who had completed paying for his merchandise, turned to leave the store, the gunman shot the guard in the left chest. The gunman then ordered everyone to lay on the floor. Patricia Brown, the cashier, opened the register pursuant to the gunman's instructions and gave him the money in the register. She was then ordered to lay down. Before leaving through the front door the gunman threw the coins he recovered from the cash register on the floor of the store. Ms. Brown called the police as soon as the gunman exited the store.

The gunman was seen to run around the side of the store into an apartment complex behind the store. He was then seen exiting the parking lot of the convenience store in a maroon Pacer. A witness followed the gunman along Ketchum for approximately two blocks, obtained the license number of the vehicle, and returned to the convenience store, where he gave the license number to the clerk. A police broadcast was made regarding the description of the car and the license number.

Two reserve officers were directed by their dispatcher to 3010 Gulf. They were looking for the maroon Pacer, which was supposively backed into the driveway at this address. When they arrived at this address, they saw a 1975 maroon Pacer in the driveway. As they approached the car, a person exited the house, went to the vehicle, and entered the vehicle from the passenger's side. This person matched the clothing description of the person who had robbed the convenience store. The officers approached the car, asked the person, later identified as the defendant, to exit the vehicle, and shined a flashlight into the vehicle. At that time the officers saw a handgun laying on the floor of the vehicle. The defendant was arrested by the officers. The gun was found to be loaded. It contained four live rounds and one discharged cartridge.

The day following the defendant's arrest a lineup was held at the Central Headquarters of the Memphis Police Department. Ms. Brown attended the lineup and identified the defendant as did Willie Lee Richardson. A packet of photographs were shown to Joe Jones and Curtis Bailey, and both witnesses identified the photograph of the defendant. Ms. Brown, Richardson, Bailey and Jones all made courtroom identifications of the defendant. Calvin Higgins, who worked with Ms. Brown at the convenience store, selected someone other than the defendant at the lineup. He was not asked to make a courtroom identification. Roy Love, Jr., the security guard who was shot, was unable to make an identification because he did not see the person who shot him.

Ms. Brown identified the pistol taken from the defendant's vehicle at the time of his arrest as the weapon used by the gunman. Richardson, Bailey and Jones also identified the pistol. Ms. Brown also identified the jacket being worn by the defendant at the time of his arrest as the jacket worn by the gunman. Richardson, Bailey and Jones also identified the jacket.

The bullet which struck Love was recovered at the point where he was shot inside the store. The spent .38 bullet, the spent cartridge, the live rounds found in the gun, and the gun itself were sent to the Tennessee Bureau of Investigation Laboratory for testing. Agent Tommy M. Heflin test fired the gun and his examination revealed the spent bullet, which struck Love, and the spent casing found inside the gun were in fact fired by the gun found in the defendant's vehicle.

The defendant presented an alibi defense. The defendant was at the apartment of Louise Johnson between 6:30 P.M. and 7:00 P.M. on the day in question. Ms. Johnson hosted a card party that evening. The defendant played cards until 9:35 P.M. or 9:45 P.M. when he left the apartment to go to the Burger Bar. The defendant never returned to the apartment that evening."

We add that the 7–11 store is near the apartment of Louise Johnson. Defense witnesses testified that the defendant drove a dark Pacer automobile to Louise Johnson's apartment on the night of the robbery and he was wearing a beige jacket with stripes similar to the one worn by the robber. The robber touched a pack of Kool cigarettes in the 7–11 store after he shot Mr. Love. This pack of cigarettes bore the defendant's fingerprints.

The defendant says that the identification evidence is insufficient because of discrepancies in details of the description of the robber. The credibility of these wit-

nesses is for the jury, but, aside from their testimony, other evidence identifying the defendant as the robber is overwhelming. The evidence of the defendant's guilt of both offenses more than meets the standard required by Rule 13(e), T.R.A.P.

In the next issue, the defendant says that photograph identifications of the defendant made by the witnesses Curtis Bailey and Joe Jones was so suggestive as to violate due process. Two other witnesses positively identified the defendant in lineups the day after the robbery and at trial.

The defendant insists that the identification of Jones and Bailey was suggestive because he was wearing the same beige jacket in the photographs that he wore when the robbery was committed. He makes no allegation that the photographs or the manner in which they were shown to the witnesses were otherwise suggestive in any respect. The robbery and shooting occurred on the night of January 28, 1982. Bailey saw the photographic array on the morning of January 30 and Jones saw the array on the morning of February 1. There were six photographs shown to the witnesses, depicting black males of similar age, body build and complexion as the defendant. The photograph of the defendant was recent; it was taken on December 15, 1981.

■■■ Due process has been violated if the court finds that the identification procedure was so suggestive as to give rise to "a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). A determination must initially be made concerning whether the pre-trial identification procedure was unreasonably suggestive. If this question is answered in the affirmative, the court then examines the totality of the circumstances to determine the reliability of the in-court identification. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d

140, 154 (1977) reaffirmed the *Stovall* cases, noting that "reliability is the linchpin." In all of the aforementioned federal cases, the witnesses were shown the defendant only, or his photograph only. The one-on-one type identification, and suggestion by the officers that the defendant is the suspect, are the targets of the decisions of the United States Supreme Court. The fact that the witness, without suggestion, recognized the robber's clothing as well as the robber does not make the identification unreliable.

■■■ The defendant argues that the officers could have obtained a photograph in which the defendant was not wearing the same clothing that he wore when he committed the robbery. The courts have not adopted a strict rule baring the use of a less reliable procedure where a more reliable one may be available; the test is whether the procedure used offends due process. *Neil v. Biggers, supra.* We note, however, that it is not established that the officer intentionally selected a photograph of the defendant in which he was wearing the same jacket that he wore during the robbery. Since we do not find that the photographic lineup was unduly suggestive, we do not apply the "totality of circumstances" test set out in *Neil v. Biggers, supra.* This issue is overruled.

■■■ In the third issue, the defendant says that the trial court erred in refusing to permit defense counsel to ask the witness, Patricia Ann Brown, if she was fired because she stole money from her employer. The question asked of the witness was "Why did you get fired?" When the State objected, defense counsel announced that he was informed that she had been fired for stealing $1,000 from the 7–11 store. The question was for the purpose of attacking the witness's credibility. The trial judge held that the question was not permitted under Rule 608(b) of the Federal Rules of Evidence which were adopted by the Tennessee Supreme Court in *State v. Morgan*, 541 S.W.2d 385, 388 (Tenn.1976). This rule provides:

"(b) *Specific instances of conduct. Specific instances of the conduct of a witness,* for the purpose of attacking or supporting his credibility, other than convictions of crime as provided in rule 609, may not be proved by extrinsic evidence. They *may,* however, *in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness....*" (Emphasis supplied)

The question called for a response of what the witness's employer gave as a reason for firing her. If it was the employer's opinion that the witness stole $1,000 and fired her for this reason, the evidence was not admissible. The question propounded asked for the employer's thought or reason in firing her; the question did not call for the expression of what the witness actually did. Technically, the trial court was correct in overruling the question as framed.

■ However, we overrule this issue because it was not raised in the defendant's motion for a new trial; therefore, it was waived. T.R.A.P. 3(a); *State v. Strouth,* 620 S.W.2d 467 (Tenn.1981). The defendant insists that it is admissible under Tennessee Rules of Appellate Procedure 13(b), in that it is plain error affecting the fairness, integrity, or public reputation of judicial proceedings. As above noted, we do not find that sustaining the objection was plain error. Had the question been phrased so as to elicit the response of what the witness actually did instead of what her employer thought that she did, or accused her of doing, then the denial still would not have been of such magnitude as to affect the fairness, integrity, or public reputation of judicial proceedings. Moreover, in view of the overwhelming evidence of the defendant's guilt, we find that had the trial judge's action been error, it would not have affected the verdict and was harmless under the standard of Tennessee Rules of Appellate Procedure 36(b). This issue is overruled.

■ The defendant next insists that the trial court erred in holding that evidence of the defendant's prior conviction for armed robbery could be used to impeach the defendant if he elected to testify in this case. At the request of defense counsel, the trial court ruled on the question prior to the defendant making an election as to whether to testify. The defendant states that the prejudicial effect of permitting this evidence outweighed its probative value. Here, again, the issue was not included in the defendant's motion for a new trial and was waived. *State v. Strouth,* 620 S.W.2d 467 (Tenn.1981). However, the crime of armed robbery involves dishonesty and the evidence was admissible without balancing probative value against prejudicial effect. *State v. Fluellen,* 626 S.W.2d 299 (Tenn.Cr.App. 1981).

■ The defendant next contends that the trial judge abused his discretion by imposing consecutive sentences. The trial judge found that the defendant was a dangerous offender, persistent offender, and multiple offender. The defendant complains that the trial court did not detail the underlying reasons for these findings and requests that the case be remanded for statements of reasons. We do not find that this is necessary as the reasons for the court's findings are obvious. *Jett v. State,* 556 S.W.2d 236, 239 (Tenn.Cr.App.1977); *Wiley v. State,* 552 S.W.2d 410, 412 (Tenn. Cr.App.1977).

■ The trial court properly found the defendant to be a dangerous offender as that term is defined in *Gray v. State,* 538 S.W.2d 391 (Tenn.1976). The *Gray* decision observes that consecutive sentences should not be imposed on defendants convicted of several counts of inherently dangerous offenses unless there are aggravating circumstances. There are aggravating circumstances in this case. No one was resisting the defendant in the commission of the robbery. He turned and shot Mr. Love for no reason, justification, provocation or excuse. Mr. Love was unarmed and was not attempting to prevent the defend-

ant from consummating the robbery. He shot Mr. Love in the chest, missing his heart by only one inch. We agree with the trial judge that the defendant is a dangerous offender.

The defendant was also a persistent offender. The *Gray* case defines a persistent offender as one who has previously been convicted of two felonies or of one felony and two misdemeanors. The defendant had two prior convictions for armed robbery and one prior misdemeanor conviction for malicious mischief. This placed the defendant in the category of a persistent offender.

██ Defendant complains because the prior convictions were based on the prosecutor's statements to the court. Defense counsel did not contest the statements and stated to the court that it could very well find that the defendant fit into the persistent offender category. No affirmative attack was made upon the reliability of the evidence concerning this sentencing question; it was therefore admissible. *State v. Cadle,* 634 S.W.2d 623 (Tenn.Cr.App.1982).

Having found that consecutive sentences are justified, on the basis that the defendant is a dangerous offender and a persistent offender, we pretermit the question of whether the defendant is a multiple offender.

We affirm the judgments as to both convictions.

WALKER, P.J., and JAMES C. BEASLEY, Special Judge, concur.