**Jack JETT, I, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

June 30, 1977.

Rehearing Denied July 15, 1977.

Certiorari Denied by Supreme Court Oct. 11, 1977.

**237**

J. Klyne Lauderback, Jr., Bristol, for appellant.

Brooks McLemore, Jr., Atty. Gen., Robert L. Jolley, Asst. Atty. Gen., Nashville, William R. Mooney, R. Jerry Beck, Asst. Dist. Attys. Gen., Blountville, for appellee.

## OPINION

DAUGHTREY, Judge.

The defendant-appellant, Jack Jett, was convicted on four charges of passing worthless checks over the value of $100.00, in violation of T.C.A. §§ 39–1959 and 39–1966. The jury sentenced him to six to ten years imprisonment in each case, and the trial judge subsequently ordered that the sentences be served consecutively, for an effective total sentence of 24 to 40 years in the penitentiary.

On appeal, the defendant challenges principally (1) the trial court's refusal to sever the individual charges, (2) the sufficiency of the evidence to support the convictions, (3) the qualifications of two of the jurors who heard the case, and (4) the validity of the court's sentencing determination. We find no merit to his contentions and we affirm the convictions.

The four checks in question were written between April 1 and April 12, 1976, and the manner in which they were passed evinces a distinct pattern. In each case the victim had advertised a vehicle for sale in a local newspaper and was telephoned by someone who represented himself to be an area used car salesman and who inquired about the advertised vehicle, asking if the owner had clear title. In three of the cases, the defendant appeared shortly thereafter at the home of each victim, struck a deal for the purchase of the advertised vehicle, issued a check drawn on Jack's Auto Sales which was signed "Jack Jett I," and took possession of the vehicle and the title in exchange for the check. The facts in the fourth case were essentially similar, except that the victim did not have the title papers at his home. He accepted a $50.00 cash deposit from the defendant in exchange for his promise to deliver title two days later. On the latter date two men who identified themselves as Jack Jett's sons handed over to the payee a check for $2400.00 and received a receipt for $2450.00, the title papers, and the vehicle. This check was in all respects similar to the other three, except as to amount. (The others were written for $1200.00, $750.00, and $550.00 respectively.) All four checks were refused by the drawee bank and returned to the payees marked "Account Closed." Some of the victim-payees attempted to locate Jett at the address printed on the check but were unable to locate a "Jack's Auto Sales" at the address listed. None of them mailed a notice of demand to Jett at that address.

Two bank employees testified for the State. Their records showed that the defendant's account, on which the four April 1976 checks were written, was overdrawn as of September 3, 1975, and that no deposits were made to his account after that date. The account was "closed" by the bank on December 11, 1975, at which time there was a deficit balance of over $3700.00. The defendant had been given personal notice by a bank vice-president in September 1975 that his account was overdrawn, but no official notice was sent to him when the account was closed in December. The bank eventually charged off the defendant's deficit balance.

■ The consolidation of separate indictments for trial is within the discretion of the trial court. *Bruce v. State*, 213 Tenn. 666, 378 S.W.2d 758 (1964). In *Bruce*, the Tennessee Supreme Court set out seven sets of circumstances under which consolidation is generally proper: (1) where the offenses charged are similar, related, or connected, or (2) are of the same or similar character or class or (3) involve or arose out of the same or related or connected acts, occurrences, transactions, series of events, or chain of circumstances, or (4) are based on

acts or transactions constituting part of a common scheme or plan or (5) are of the same pattern and committed in the same manner, or (6) where there is a common element of substantial importance in their commission, or (7) where the same, or much the same, evidence will be competent and admissible or required in their prosecution, and if not joined for trial the repetition or reproduction of substantially the same testimony will be required on each trial. 378 S.W.2d at 759–60.

■ The four cases before us meet virtually all of these conditions. It follows that the trial judge committed no abuse of discretion in ordering the four separate indictments consolidated for trial.

■ The seventh circumstance mentioned in *Bruce, supra,* becomes relevant in assessing the sufficiency of the evidence to support these convictions. The defendant contends that there is no evidence to convict him in the case involving delivery of the $2400.00 check by his son. From a review of the evidence we think it is clear that Jett's son was acting as Jett's agent in the passing of this check. Furthermore, there was sufficient evidence of the similarity between all four checks to support a finding by the jury that the check in question was written by Jack Jett in violation of T.C.A. § 39–1959.

Next the defendant contends that there is not sufficient evidence to support the verdict because the State failed to prove that written notice had been given, as required by T.C.A. § 39–1960. That statute provides:

> As against the maker, or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence and create a presumption of intent to defraud and of

knowledge of insufficient funds in, or on deposit with, such bank, corporation, firm or person, provided such maker or drawer shall not have paid the holder thereof the amount due thereon within five (5) days after receiving notice that such check, draft or order has not been paid by the drawee.

■ It has been held that the statute creates a rebuttable presumption as to the existence of two of the elements of the crime defined by § 39–1959, *i. e.* (1) fraudulent intent and (2) guilty knowledge. *Johnston v. Zale Corp.,* 484 S.W.2d 531 (Tenn. 1972). But nothing in T.C.A. § 39–1960 can be read as requiring proof of notice as an element of the crime defined by T.C.A. § 39–1959. While the statutory presumption creates one method of establishing the existence of knowledge and intent, plainly it is not the exclusive method. As this court has previously held:

> [I]t is not the failure to pay after notice that is the offense. It is passing the worthless check with fraudulent intent that constitutes the crime.

*Stines v. State of Tennessee,* Tenn.Cr.App., 556 S.W.2d 234, filed at Nashville, June 22, 1977.

■ There was direct proof in this case to establish the defendant's knowledge of insufficient funds on deposit in his bank account. Given this fact and the other proof in the record, including the number of checks written by Jett in a short period of time, we think there was strong circumstantial evidence from which the jury could find that the defendant made and issued the checks in question with the intent to defraud the individual payees of those checks.* We therefore overrule all the assignments of error relating to the proof.

■ The defendant next contends that a mistrial should have been granted when it

---

* The State urges that proof of written notice was unnecessary, because the account had been closed and this reason for non-payment had been stamped on the check. Thus, the State argues, the notice requirement was dispensed with under the terms of T.C.A. § 39–1962(c). Under the provision, the notice specified in § 39–1960 and defined in § 39–1961 becomes unnecessary "if the drawer . . . did not

have an account with the drawee . . . at the time the [check] was issued or dishonored." The defendant insists that he had an account at the specified times, relying on the bank official's testimony that although the account was marked "closed" for purposes of further debit entries, it could have been reactivated simply by the deposit of enough money to create a credit balance. Because there is sufficient evi-

was learned that two jurors purportedly knew another person who had received a worthless check from the defendant. The record wholly fails to establish that any member of the jury had such knowledge, or was in any other manner disqualified from sitting on the case. The assignment must therefore be overruled.

 Finally, the defendant attacks the trial court's decision to run the sentences consecutively, on the grounds that the court failed to utilize the sentencing standards mandated in *Gray v. State*, 538 S.W.2d 391 (Tenn.1976). Although the trial judge did not couch his decision in the language of the *Gray* opinion, a fair reading of the record indicates that he found the defendant to be a persistent offender, which is one of the categories authorized in *Gray* as a basis for consecutive sentencing. We think there is ample evidence to support this finding: Jett had a record of some eight previous convictions involving worthless checks and obtaining property under false pretenses, stretching back over a sixteen year period, and he had five other felony indictments for bad checks pending at the time these four convictions were obtained. Although technically speaking the trial judge did not label Jett a persistent offender, we do not hesitate to do so. See *Adams v. State*, 547 S.W.2d 553, 558 (Tenn.1977). We therefore overrule the assignment of error related to the sentencing determination.

We have examined the remaining assignments and find that they are likewise without merit, with one exception. Conviction of T.C.A. § 39–1959 is not included in T.C.A. § 40–2712, which sets out the crimes for which a defendant may be declared infamous. Therefore the judgment must be modified by vacating that portion of it which incorrectly adjudges the defendant to be infamous.

Affirmed as modified.

RUSSELL, Panel P. J., and GALBREATH, J., concur.

dence in the record to establish the existence of actual intent to defraud on the part of the defendant, as well as direct proof of his guilty knowledge, we think it is unnecessary to reach the question of whether Jett had an account with the drawee bank for purposes of T.C.A. § 39–1963.