**STATE of Tennessee, Appellee,**

v.

**Beth B. WHITE, Appellant.**

Court of Criminal Appeals of Tennessee, Nashville.

Dec. 20, 1982.

Permission to Appeal Denied by Supreme Court March 14, 1983.

Raymond W. Fraley, Jr., Fayetteville, for appellant.

William M. Leech, Jr., Atty. Gen., David M. Himmelreich, Asst. Atty. Gen. of Tennessee, Nashville, James S. Kidd, Dist. Atty. Gen., Fayetteville, Barry White, Asst. Dist. Atty. Gen., Lewisburg, Fred I. Womack, Sp. Prosecutor, Fayetteville, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, Beth B. White, was convicted of passing a worthless check in an amount exceeding one hundred dollars ($100). She received a penitentiary sentence of not less than three (3) nor more than three (3) years. In this appeal, the defendant challenges the sufficiency of the evidence. Also, she contends that the trial court erred in excluding certain evidence, in refusing a requested instruction, and in denying her probation. We find no error.

The State's evidence showed that on September 18, 1978, Carol Stafford, an employee of the Peoples Bank of Elk Valley (in Fayetteville-Kelso, Tennessee), received a telephone call from the defendant who was in Alabama. The defendant told Ms. Staf-

ford she was buying a farm and was writing a large check to an Alabama bank on her account at Peoples Bank. She explained to Ms. Stafford that she did not have sufficient funds in her Peoples Bank account to cover the check, but that she would make a deposit later on. In the meantime, the defendant asked Ms. Stafford to verify the check if the Alabama bank called. On September 19, 1978, the Central Bank of Alabama called Ms. Stafford to verify that check. Ms. Stafford explained to the representative of the Alabama bank that the check was not good, but based on the defendant's promise to make a deposit and her prior history with the bank, that the "funds would probably be good."

On September 20, 1978, the defendant deposited a check in the amount of $79,-000.00 in her account at the Peoples Bank. This check is the subject matter of the present case. This check was drawn on the Bank of Huntsville (in Alabama), payable to the defendant's son-in-law, Stephen Few, and signed by the defendant. It was endorsed with the name of "Stephen H. Few," and designated "for deposit only." The check was later returned to the Peoples Bank by the drawee bank stamped "check returned—insufficient funds."

The check that the defendant had previously written to the Central Bank of Alabama on her account with Peoples Bank was for $68,930. It arrived at Peoples Bank on September 22, 1978, and was paid on that date with funds from the $79,000.00 check. As stated above, this latter check was dishonored by the Bank of Huntsville, and it was returned to Peoples Bank on September 29, 1978. Ultimately, the worthless check was charged back against the defendant's account which left her account overdrawn to the extent of $102,707.46.

Other evidence showed that in the days preceding September 20, 1978, the defendant wrote several checks in large amounts on her account with the Bank of Huntsville. Some were honored by the bank and some

were not. If all had been honored, her account at the Huntsville bank would have been overdrawn by $238,837.20.

The defendant did not testify at the trial, but presented as a witness her son, who explained that his parents had become heavily indebted because of the failure of their farm operation. According to the defendant's son, the family had attempted to obtain a loan from the Federal Land Bank, and the defendant had received assurances that the loan would be granted, but the loan never came through.

The essential elements of the crime of passing a worthless check for an amount exceeding $100.00 are: (1) issuance of a check with fraudulent intent to obtain money or credit; (2) issuing the check with knowledge of insufficient funds on deposit with the drawee bank to cover the check; (3) the subsequent failure of the drawer to pay the check within five (5) days after receiving notice that the check was dishonored by the drawee; and (4) the amount of the check exceeded $100. T.C.A. §§ 39–1959 (Supp.1981),—1960 (1975),—1966(b) (1975).

T.C.A. § 39–1959 (Supp.1981) proscribes the issuance, with fraudulent intent of a check for money, services or credit where there are insufficient funds in the drawer's account at the drawee bank to cover the check. T.C.A. § 39–1960 (1975) creates a rebuttable presumption (inference)[1] as to the existence of two (2) of the elements of the crime, i.e. (1) fraudulent intent, and (2) guilty knowledge, provided the drawee of the check does not pay the holder the amount due thereon within five (5) days after receiving notice that the check has been dishonored by the drawee bank. *See Johnston v. Zale Corp.,* 484 S.W.2d 531 (Tenn.1972); *Jett v. State,* 556 S.W.2d 236 (Tenn.Cr.App.1977).

However, nothing in T.C.A. § 39–1960 (1975) can be read as requiring proof of notice as an element of the crime defined by T.C.A. § 39–1959 (Supp.1981), and while

1. In *Merriweather v. State,* 625 S.W.2d 256 (Tenn.1980), the Supreme Court suggests that

the term "inference" is preferable over the term "presumption."

the statutory inference creates one method of establishing the existence of knowledge and intent, it is not the only method. It is not the failure to pay after notice that is the offense. It is passing the worthless check with fraudulent intent that constitutes the crime. *Jett v. State, supra.* Further, and particularly applicable to the present case, notice is dispensed with where the situs of the drawee bank is not in the state of Tennessee. T.C.A. § 39–1962 (1975).

■ Under the facts in the present case, and since no notice was required to be given, the statutory inference of intent to defraud arose with the drawee's dishonor of the check, and since there was no relevant evidence to rebut the inference then the elements of fraudulent intent and guilty knowledge were shown.

Moreover, aside from any inference on the question of fraudulent intent, the evidence in this case shows that at the time the defendant issued this check, she did it with intent to defraud. Unquestionably, the evidence shows that she knew at the time she issued the check that there were not sufficient funds at the drawee bank to cover the check. This fact, along with the proof showing the connection of the present incident to the defendant's overall actions in a check kiting scheme involving several banks in two (2) states, clearly established the element of fraudulent intent.

The evidence is overwhelming to show the defendant's guilt. The jury was fully warranted in finding her guilty beyond a reasonable doubt. *T.R.A.P.* 13(e); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Next, the defendant contends that the trial court erroneously excluded evidence regarding the reasons why she failed to return to the bank within five (5) days to make good on the check. Apparently, the defendant wanted to show that she attempted suicide and was in the hospital, and thus was unable to return to the bank to see about the check.

■ The record indicates that the trial judge only sustained objections to questions about the defendant's attempted suicide when those questions were posed to witnesses who were not qualified to testify about that subject matter. The defendant made no offer of proof by a qualified witness on this question. Further, under the facts of this case, the subsequent actions or omissions by the defendant would have no relevancy on the question of her guilt or innocence. Such would not serve to negate the fraudulent intent which the evidence clearly showed she had at the time of the issuance of the check. Moreover, had the attempted suicide evidence been admitted, it would have served to the detriment of the defendant because evidence that an accused attempted suicide can be considered by a jury as a circumstance tending in some degree to show a consciousness of guilt. 1 Wharton's Criminal Evidence § 219 (C. Torcia ed. 1972); 22 A.L.R.3rd 840.

■ Also, it was not error for the district attorney general to argue that "the defendant never returned after she got this money." One of the State's witnesses had testified to this effect, and no objection was made to this testimony by the defendant. Thus, while this testimony and argument added nothing to the State's case, nevertheless, the argument was not error because it was predicated on evidence in the record.

■ Additionally, we find the trial court correctly excluded from the evidence a creditors agreement in which the defendant agreed to a schedule of payment of her debts, including her obligation to the Peoples Bank on the present check.

As we have stated herein, the facts in the present case show that the defendant's criminal responsibility was fixed at the time the check was issued and subsequently dishonored by the drawee bank. Any subsequent agreement by the defendant to repay the funds on some sort of schedule would not be material. In *State v. Charles Payne,* No. 2 (Tenn.Cr.App., June 10, 1982, Jackson), we held that partial restitution on a worthless check would not be a defense to a criminal prosecution for passing such a check.

 Also, the trial court did not err in refusing the defendant's special request to the effect that payment or an agreement to pay an amount owed as a civil debt on the basis of a worthless check would rebut any statutory inference of guilty knowledge and fraudulent intent. There was no evidence admitted before the jury in this case on which such an instruction could have been predicated. Thus, it was properly refused. *Scalf v. State,* 565 S.W.2d 506 (Tenn.Cr. App.1978).

Finally, the defendant says the trial court erred in denying her probation.

In his order denying probation the trial judge set out a multitude of reasons for denying probation, including, *inter alia,* the deterrent effect upon the defendant and others, the lengthy period over which the defendant's violations occurred, the numerous victims harmed by the defendant's criminal scheme, the large sums involved that were never accounted for, and her two (2) prior Federal felony convictions.

The reasons assigned by the trial judge for denying probation are fully documented by either the facts developed during the trial or by the evidence offered at the probation hearing.

At the probation hearing, numerous witnesses, including a Federal probation officer, attested to the defendant's fitness for probation. The record contains numerous letters of recommendations in her behalf from responsible citizens. Also, the trial court pointed out that the defendant had already suffered considerably, and that she, as well as her family, had undergone much stress and financial difficulty because of her plight.

On the other hand, the record shows that the trial judge was concerned about the other factors involved in the defendant's case. He took note of her prior Federal convictions which were entered on December 20, 1979, in Alabama. One conviction involved an offense on June 12, 1978, and was for overvaluing property given as security for a loan. The other conviction concerned a false statement she made on a May 1, 1978, loan application.

Sheriff Tom Bean testified at the probation hearing and said that the defendant's incarceration would deter like crimes and made reference to the numerous worthless check violations that occurred in Lincoln County.

We note that a trial judge may deny probation upon the ground of the deterrent effect upon other criminal activity. T.C.A. § 40–2904(a)(1) (Supp.1981).

Thus, the deterrence factor, the nature and circumstances of the offense, the enormity of the crime, and the defendant's prior criminal record were all considered by the trial judge in reaching his decision to deny probation. The record demonstrates that the defendant was afforded all of her rights as contemplated by the statutory scheme of T.C.A. § 40–2904 (Supp.1981). The trial court considered all of the factors mentioned in *Stiller v. State,* 516 S.W.2d 617 (Tenn.1974).

 When a trial judge gives due consideration to the criteria set forth in *Stiller* and T.C.A. § 40–2904, we may only find an abuse of discretion where there is no substantial evidence to support his conclusion. *State v. Grear,* 568 S.W.2d 285 (Tenn.1978). Clearly, there is substantial evidence here to support the conclusion of the trial judge.

The judgment of the trial court is affirmed.

DWYER and BYERS, JJ., concur.