FILED
10/28/2025
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 5, 2025

**STATE OF TENNESSEE v. JOHN F. CURRAN, III**

**Appeal from the Circuit Court for Hardin County**
**No. 21-CR-170     J. Brent Bradberry, Judge**

———————————————

**No. W2023-01775-CCA-R3-CD**

———————————————

The Defendant, John F. Curran, III, appeals his Hardin County convictions for passing a worthless check and filing a false lien, for which he received a total effective sentence of five years in the Tennessee Department of Correction. On appeal, the Defendant argues that: (1) the State failed to establish territorial jurisdiction because the offenses took place on federal property; (2) the trial court erred by denying the Defendant's motion to recuse; (3) the trial court erred by denying defense counsel's motion to withdraw when counsel explained he lacked knowledge and experience in federal maritime law and admiralty jurisdiction; (4) the trial court violated the Defendant's due process rights by initially granting his pretrial motion to present affirmative defenses but later ruling those defenses could not be presented to the jury; (5) the evidence was insufficient to support the Defendant's conviction for passing a worthless check because the payment was for a pre-existing debt and not to induce services; (6) the State committed two *Brady*[1] violations when it failed to disclose evidence proving the State lacked jurisdiction over the case, which led to false testimony from State witnesses; and (7) the trial court erred by imposing a sentence other than the statutory minimum and by imposing an illegal sentence when it failed to cite the victims for each count, failed to order restitution for passing a worthless check, and took no action to remove the lien from the property at issue. After review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and STEVEN W. SWORD, JJ., joined.

John F. Curran, III, Mt. Juliet, Tennessee, Pro Se.

———————————————

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Neil Thompson, District Attorney General; and Patrick S. Butler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I.   FACTUAL AND PROCEDURAL HISTORY

This case arises from a series of events in the summer of 2021 during which the Defendant attempted to purchase and restore the Saltillo Marina and Campground ("the Marina") located in Hardin County, Tennessee. For his role in these events, in November 2021, the Defendant was indicted by a Hardin County grand jury for passing a worthless check and filing a false lien. *See* Tenn. Code Ann. §§ 39-14-121, -17-117. The Defendant proceeded to a jury trial and was found guilty as charged.

At a two-day jury trial beginning on October 5, 2023, Carl Arthur Fronabarger testified that he owned the Marina in question, which he had purchased over twenty years ago from the Grissom family. Mr. Fronabarger explained that he lived out of state and that his power of attorney, Jimmy Tate, handled his real estate transactions in Tennessee. Mr. Fronabarger recalled that, at some point, a buyer had inquired about purchasing the Marina, but no money was exchanged, and no contract was ever finalized.

Mr. Tate confirmed that he acted as Mr. Fronabarger's agent and noted that Mr. Fronabarger was his uncle, who was in his eighties. Mr. Tate explained that the Marina covered twenty-two acres, had been non-operational for years, and was an overgrown "hole of water." Prior to the summer of 2021, the Defendant contacted Mr. Tate regarding purchasing the Marina, and the two discussed terms and price. After about a year of discussions, Mr. Tate informed the Defendant that the Defendant would need to pay an agreed upon amount by a certain date or negotiations would end. According to Mr. Tate, no contract of any kind was ever executed. However, Mr. Tate was aware of work being performed at the Marina at the Defendant's behest, as the Defendant had received permission from Mr. Tate to clean up the Marina to hold a wedding reception there.

When defense counsel asked Mr. Tate whether he knew that the Defendant had filed a federal lawsuit concerning the Marina, the State objected. A bench conference ensued where the State argued the federal lawsuit was not relevant to the matter at hand. Defense counsel argued that the federal lawsuit was relevant as to whether a reasonable basis existed to file a lien and that he was planning to introduce only the existence of a lawsuit and the date it was filed. The trial court overruled the objection reasoning that the timing of the

- 2 -

lawsuit could be relevant and that the Defendant had a right to present this defense. Cross-examination resumed, and Mr. Tate acknowledged that he was aware of the federal lawsuit.

Tracy Dickerson worked at the Hardin County Register of Deeds, and in July of 2021, the Defendant came into the office wanting to file a Uniform Commercial Code ("UCC") financing statement. She noticed the information contained in the statement was handwritten, something she had not seen before, and that the statement was incomplete because the maximum principal was listed as zero and the property description was not linked to a deed book and page number. She informed the Defendant that she could not record an incomplete statement. The Defendant insisted it be recorded and appeared nervous and anxious. After a back-and-forth exchange, the Defendant requested a copy of the deed to the Marina, and once Ms. Dickerson retrieved it, the Defendant attached the property description of the deed to the UCC statement, wrote the Marina's deed book and page number on the attached deed, and initialed it. Ms. Dickerson called her supervisor regarding the situation and was instructed to record the instrument if the Defendant paid the associated recording fee. Ms. Dickerson agreed that, when a document was filed pertaining to a piece of property, it was either to place a lien on the property or to record a warranty deed or trust.

Julie Gail Adkisson, the Hardin County Register of Deeds, further explained that, if an individual had the correct information on a recording instrument, her office could not make judgment calls or initiate an investigation regarding the instrument but was required by law to record it. She identified the warranty deed to the Marina that conveyed the sale of property located in Hardin County from Glenda M. Grissom to Carl A. Fronabarger on August 31, 2000. The warranty deed contained a provision excluding "a strip of land measuring five (5) poles West of the low water line of the Tennessee River running North a distance of fifteen (15) poles to Doe Creek" because it was being controlled by the Tennessee Valley Authority ("TVA"). Ms. Adkisson then identified two UCC financing statements the Defendant had filed on July 8, 2021, with the Hardin County Register of Deeds. She noted that the UCC financing statements, which were seemingly identical, linked the warranty deed conveying the Hardin County property to Mr. Fronabarger. She further noted that the UCC filing statements indicated that the Defendant had filed them with the Tennessee Secretary of State. Both UCC financing statements and the warranty deed were entered as exhibits.

Dustin Scott knew the Defendant through their employment with the Saltillo Fire Department. In addition to working as a firefighter, Mr. Scott worked odd jobs around the area. The Defendant approached Mr. Scott about cleaning up the Marina and offered him $100,000 to assist with and oversee the project, to which Mr. Scott agreed. While the two

did not agree upon an exact timeline for the project, the Marina was a large area and it was understood that the work requested would take a substantial amount of time to complete. Mr. Scott informed the Defendant that he would complete the work as quickly as possible. The Defendant gave Mr. Scott a map of the areas that needed work, and Mr. Scott began flagging these areas and assessing the type of equipment and manpower needed. He also started bush hogging the property, removing scrap metal, and using a chainsaw to clear the area for larger equipment. He noted that a flood had hit the area at some point and items on the property were missing, debris and equipment were scattered around, and the property was in "rough shape." He said he was not doing work for a wedding but for the "marina part."

Mr. Scott did not receive payment prior to beginning work, and after about two to three weeks, he told the Defendant he needed payment because he was missing out on other side work. Mr. Scott and the Defendant had communicated over text messages about cost, but the two had not agreed to an hourly rate, only to the payment of $100,000 for the entire project. In response to Mr. Scott's inquiry, the Defendant gave him a check for $25,000, which was entered as an exhibit. The check was dated May 18, 2021, and noted it was for "week 1." Mr. Scott acknowledged that he informed law enforcement he had completed about $1,000 worth of services at the time he first reached out to the Defendant about payment because he had been working around his shifts at the fire department and was only at the Marina sporadically during the two-to-three-week period.

After receiving the check, Mr. Scott took it to the bank and was informed the check would take a few days to process. During this time, Mr. Scott continued working on the Marina, but when he received notice that the check did not clear, he stopped all work. He informed the Defendant that the check had not cleared and that he would discontinue work on the Marina until he received payment. He acknowledged that he did not send the Defendant a final bill but confirmed that he never received payment for his work on the Marina prior to or after receiving the check. He also confirmed this occurred in Hardin County, Tennessee.

Special Agent Joseph Hudgins with Tennessee Highway Patrol and Homeland Security investigated the Defendant's actions concerning the Marina. He interviewed Mr. Tate and Mr. Scott, and during this investigation, he understood there was a question regarding ownership of the Marina property. He went to the Hardin County Register of Deeds and retrieved all documents associated with the Marina. From the warranty deed, it was "pretty clear" that Mr. Fronabarger owned the property at issue. Special Agent Hudgins additionally subpoenaed the Defendant's bank records, and he noted that on May 18, 2021, the date the Defendant wrote Mr. Scott the $25,000 check, the Defendant had

only $443 in his bank account. He confirmed that his investigation did not reveal the Defendant had another bank account and that, based on his review of the Defendant's bank records that spanned over two years, he was satisfied the Defendant was not going to have the required funds in the account to pay Mr. Scott.

The State rested, and the Defendant did not present proof. The Defendant moved for a judgment of acquittal, which was denied. During closing arguments, defense counsel addressed the charge of passing a worthless check. Noting that a conviction for this offense required the check to be passed to induce services, he emphasized the importance of when the check was passed and argued the check was passed to Mr. Scott after services had started and not to secure future services. Regarding the filing of a false lien charge, defense counsel reminded the jury that a conviction required no reasonable basis exist for the filing of the lien. Noting the federal lawsuit concerning the Marina and the contract negotiations between the parties, defense counsel argued the Defendant had a reasonable basis to place such lien in an effort to protect his interests in the Marina until the lawsuit concluded.

The jury found the Defendant guilty as charged. The record on appeal does not contain a sentencing hearing transcript, but the judgment forms, entered on July 3, 2024, reflect that the Defendant received a five-year sentence for passing a worthless check and a two-year sentence for filing a false lien. These sentences were ordered to run concurrently for a total effective sentence of five years in the Tennessee Department of Correction. The Defendant filed a motion for new trial but later filed a pro se "Notice of Withdraw[a]l of Motions," in which he moved the trial court to withdraw his motion for new trial. On September 25, 2024, the trial court entered an order granting the Defendant's motion to withdraw the previously filed motion for new trial based "upon the statements of the Defendant and Counsel for [the] Defendant[,]" however, no transcript of a hearing regarding this matter is included in the record on appeal. This appeal followed.

## II.    ANALYSIS

### A.    Jurisdiction

The Defendant contends that the State of Tennessee lacked territorial jurisdiction to prosecute this case.[2] To this point, he makes a number of assertions. The Defendant claims that the alleged criminal offenses took place on the Tennessee River and its flowage

---

[2] In his argument section, the Defendant references the issues of venue and subject matter jurisdiction. However, he makes no substantive argument nor does he provide any supporting authority concerning these issues. As such, we surmise the crux of the Defendant's argument concerns territorial jurisdiction and do not consider the other issues in this appeal.

easements, which he contends are the exclusive property of the TVA and, therefore, are under the exclusive jurisdiction of the United States Coast Guard ("USCG"). He asserts that Mr. Fronabarger "knowing[ly] and willfully abandoned the powered vessel known as the Saltillo Marina," and the Defendant was authorized under federal law to conduct "a commercial salvage operation on the inland waterway of the Tennessee River to protect the environment by removing fuel, fuel storage tanks and fuel dispensing equipment from the powered vessel known as the Saltillo Marina Office at her current resting point [at]. . . TVA owned island, Jeter Towhead." He asserts the USCG maintains exclusive jurisdiction over commercial salvage operations, and the State of Tennessee never sought concurrent jurisdiction to prosecute this case in the Hardin County Circuit Court.

The State responds that the State had territorial jurisdiction because the Defendant's criminal conduct took place in Hardin County, Tennessee, and the Defendant was not prosecuted for any action that occurred on the Tennessee River or on the banks of the Tennessee River. In his reply brief, the Defendant argues that Mr. Fronabarger admitted in his testimony that his purchase of the Marina was from an alleged seller who was "merely renting" the property, Mr. Fronabarger "sought to dupe" the United States Government out of its property, and Mr. Fronabarger does not own the property underlying this matter.

Initially, we note that the Defendant has appended numerous documents to his appellate brief and to various motions and pleadings filed in this court regarding his appeal. This court will only review evidence properly included in the appellate record. Documents attached to appellate briefs, but not included in the record, cannot be considered as part of the record on appeal. *See State v. Price*, 46 S.W.3d 785, 812 (Tenn. Crim. App. 2000); *Best v. State*, 708 S.W.2d 421, 423 (Tenn. Crim. App. 1985); *see also State v. Matthews*, 805 S.W.2d 776, 783-84 (Tenn. Crim. App. 1990) (refusing to consider transcripts attached to the defendant's brief because they were not made part of the record); Tenn. R. App. P. 13(c). Furthermore, evidence recounted in the text of a defendant's brief that is not properly included in the record on appeal also will not be considered. *See State v. Seyler*, No. 01C01-9801-CR-00050, 1999 WL 357348, at *3 n.3 (Tenn. Crim. App. June 4, 1999) ("Facts recited in a party's brief, but not included in the record on appeal, are not evidence."). Accordingly, the various documents appended to the Defendant's brief and various pleadings that are not included in the appellate record, as well as those portions of his argument referring to these documents, have not been considered in the adjudication of this appeal. We now move to merits of the Defendant's territorial jurisdiction argument.

A criminal defendant has the right to trial "by an impartial jury of the County in which the crime shall have been committed[.]" Tenn. Const. art. I, §9; *see* U.S. Const.

amend. VI. As such, "[i]t is elementary that before a court may exercise judicial power to hear and determine a criminal prosecution, that court must possess three types of jurisdiction: jurisdiction over the defendant, jurisdiction over the alleged crime, and territorial jurisdiction." *State v. Legg*, 9 S.W.3d 111, 114 (Tenn. 1999). Territorial jurisdiction recognizes the power of a state to punish criminal conduct occurring within its borders. *Id.* To this point, "territorial jurisdiction reflects that '[a] state's criminal law is of no force and effect beyond its territorial limits[.]'" *Id.* (quoting *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 658-59 (Tenn.1990)). Territorial jurisdiction must be proven beyond a reasonable doubt. *See State v. Beall*, 729 S.W.2d 270, 271 (Tenn. Crim. App. 1986). Whether a crime was committed within the State of Tennessee is "a factual matter to be resolved by the jury after hearing all the testimony of the witnesses, weighing their credibility, and applying to the facts the law as given them by the trial judge." *Id.*

Regarding the Defendant's filing a false lien, while the Defendant contends the underlying property in this offense was federal property, we note the warranty deed linked to the UCC financing statements concerned property owned by Mr. Fronabarger located in Hardin County, Tennessee, and specifically excluded any TVA land included within the property description. Additionally, the Defendant recorded the lien with the Hardin County Register of Deeds located in Hardin County, Tennessee. *Cf. State v. Lyons*, No. M2019-01946-CCA-R3-CD, 2021 WL 1083703, at *8 (Tenn. Crim. App. Mar. 22, 2021) (holding venue for filing fraudulent liens was appropriately established in the county where the liens were filed), *aff'd*, 669 S.W.3d 775 (Tenn. 2023). As to passing a worthless check, Mr. Scott testified that the Defendant gave him the check in Hardin County. *See Williams v. State*, 281 S.W.2d 41, 42 (Tenn. 1955) (holding the State of Tennessee had jurisdiction over the case when the evidence showed the defendant passed the check in Tennessee). Accordingly, we conclude territorial jurisdiction was established as the State proved beyond a reasonable doubt that the offenses occurred in Hardin County, Tennessee. *See Legg*, 9 S.W.3d at 114; *Beall*, 729 S.W.2d at 271. The Defendant is not entitled to relief.

### B.     Motion to Recuse

The Defendant asserts that the trial court erred by denying his motion to recuse. To this point, he reasons that the trial judge had a conflict of interest because the trial judge was named in the Defendant's federal lawsuit and was the subject of a complaint with the Tennessee Board of Judicial Conduct, resulting in the trial judge's issuing adverse and retaliatory rulings against him. The State responds that the trial court did not err in denying the Defendant's motion to recuse because the record provides no grounds for recusal.

## 1.     Pertinent Facts

On September 25, 2023, prior to trial, the Defendant filed a motion to recuse the trial judge, alleging that the trial judge's impartiality in the case might reasonably be questioned because of the judge's being named in the Defendant's federal lawsuit.  The trial court denied the motion to recuse on October 2, 2023, reasoning that the Defendant was "on a quest" to delay the proceedings and that the Defendant failed to present a reasonable factual basis for questioning the trial judge's impartiality.  To rule otherwise, the trial court explained, would embolden other defendants to employ similar delaying tactics by signaling that the filing of a federal lawsuit would result in judicial recusal.

Thereafter, on October 4, 2023, the Defendant sought an accelerated interlocutory appeal in this court pursuant to Tennessee Supreme Court Rule 10B, section 2.  Acting summarily upon the petition, this court affirmed the trial court's denial of the Defendant's recusal motion under a de novo standard of review.  *See State v. Curran, III*, No. W2023-01411-CCA-T10B-CO (Tenn. Crim. App. Oct. 10, 2023) (order).   In the order, our court explained

> Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rule 2.11 provides, "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned."  Even if a judge subjectively believes he can be fair and impartial, recusal is required whenever "the judge's impartiality might be reasonably questioned because the appearance of bias is as injurious to the integrity of the judicial system as actual bias."  *Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011) (internal quotation omitted). . . .
>
> . . . .
> "[A] defendant's filing of a lawsuit against the trial judge is normally insufficient to warrant recusal."  *State v. Jones*, No. M2015-00720-CCA-R3-CD, 2016 WL 3621513, at *8 (Tenn. Crim. App. June 29, 2016) (citing *State v. Parton*, 817 S.W.2d 28, 29-30 (Tenn. Crim. App. 1991)).  "To hold otherwise would mean that a defendant could automatically disqualify a judge by filing a frivolous suit, inviting additional frivolous litigation, manipulation of the judicial system, and forum shopping."  *Id*. (citing *State v. Parsons*, 437 S.W.3d 457, 483 n.18 (Tenn. Crim. App. 2011)).

As such, we concluded that the Defendant had identified no factual basis for questioning the trial judge's impartiality other than the Defendant's naming the judge in a federal lawsuit and that such a ground was normally insufficient to warrant recusal.

Subsequently, during the pendency of his appeal in this case, the Defendant has filed several motions with this court appealing the denial of his motion to recuse.

In a motion filed with this court on September 24, 2024, the Defendant argued the trial judge should be disqualified based on: (1) the trial judge's being named in the Defendant's federal lawsuit, (2) the Defendant's filing a complaint with the Tennessee Board of Judicial Conduct alleging the trial judge received campaign donations from one of the State's witnesses, (3) the trial judge's awareness of witness intimidation, and (4) the trial judge's issuing "several highly questionable" rulings since denying the Defendant's motion to recuse. On September 25, 2024, this court denied the Defendant's motion and explained that the two alternative methods for appealing the denial of a motion to recuse were either in an accelerated interlocutory appeal pursuant to Tennessee Supreme Court Rule 10B, section 2, or as an issue raised in an appeal as of right following the entry of the trial court's judgment. *See* Tenn. Sup. Ct. R. 10B, § 2.01; Tenn. R. App. P. 3. This court reminded the Defendant that he had been instructed to include all substantive claims for relief in an appellate brief. However, it noted that the Defendant's September 25, 2023 motion to recuse the trial judge had been previously appealed to this court pursuant to Tennessee Rule of Appellate Procedure Rule 10B and decided on the merits, thus making the ruling the law of the case.

On September 29, 2024, the Defendant filed yet another pleading in this court entitled "Notice of Appeal" asserting that, "as an interlocutory appeal as of right," he was challenging the denial of his motion to recuse the trial judge. On October 4, 2024, this court issued an order that denied the motion, reiterated its explanation regarding the alternative methods for appealing a trial court's denial of a motion to recuse, noted that the Defendant could raise this issue in his appellate brief, and again reminded the Defendant that his September 25, 2023 motion to recuse had been adjudicated on the merits, and appealed to this court, and such ruling was the law of the case. The Defendant appealed this October 4, 2024 ruling to the Tennessee Supreme Court but was denied relief.

2.      Analysis

Here, the Defendant specifically challenges the trial court's denial of his September 25, 2023 motion to recuse wherein he alleged a conflict of interest due to the trial judge's being named in the Defendant's federal lawsuit. As this court has explained to the Defendant, its de novo review pursuant to Tennessee Supreme Court Rule 10B, section 2 affirming the trial court's denial of the motion to recuse is binding upon this court under the law of the case doctrine. *See State v. Jefferson*, 31 S.W.3d 558, 560-61 (Tenn. 2000); *Pruitt v. State*, No. W2019-00973-CCA-R3-PD, 2022 WL 1439977, at *55-56 (Tenn.

- 9 -

Crim. App. May 6, 2022) (holding the law of the case doctrine precluded this court from reconsidering the post-conviction court's denial of the defendant's motion to recuse when such issue had previously been reviewed and decided on the merits by this court in an accelerated interlocutory appeal).

However, "[t]here are limited circumstances which may justify reconsideration of an issue which was [an] issue decided in a prior appeal: (1) the evidence offered at a trial or hearing after remand was substantially different from the evidence in the initial proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; or (3) the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal." *Jefferson*, 31 S.W.3d at 561 (quoting *Memphis Publ'g. Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998)). The Defendant does not allege in his appellate brief that this court's prior decision was clearly erroneous and would result in manifest injustice or that there has been a change in controlling law. *See id.* at 560-61. We likewise know of no reason for reconsideration.

As to the Defendant's additional arguments regarding his filing a complaint against the trial judge and receiving adverse rulings thereafter, the Defendant failed to file any additional motions to recuse in the trial court based on these accusations. He also withdrew his motion for new trial, which could have presented these issues to the trial court for consideration. As such, the latter issues are waived for these reasons. *See Lofton v. Lofton*, 345 S.W.3d 913, 917 (Tenn. Ct. App. 2008) (quoting *Davis v. State Dept. of Employment Sec.,* 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999)) (stating that motions to recuse "must be filed promptly after the facts forming the basis for the motion become known" and failure to seek recusal in a timely manner "results in waiver of a party's right to question a judge's impartiality"); *State v. Cordell*, 645 S.W.2d 763, 765 (Tenn. Crim. App. 1982) (waiving issue of recusal on appeal when defendant failed to present motion to trial court and failed to raise such issue in her motion for new trial); Tenn. R. App. P. 3(e), 36(a). We briefly note that such grounds are generally insufficient to disqualify a judge. *See Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994); *Pruitt*, 2022 WL 1439977, at *56; *Jones*, 2016 WL 3621513, at *8. The Defendant is not entitled to relief.

### C. Motion to Withdraw

The Defendant contends that the trial court erred by denying defense counsel's motion to withdraw due to counsel's being unfamiliar with federal maritime law and admiralty jurisdiction. The State responds this issue is waived.

The failure to file a motion for new trial results in waiver of a defendant's issue regarding counsel withdrawing from representation. *See State v. King*, No. M2008-00033-CCA-R3-CD, 2009 WL 1163432, at *2 (Tenn. Crim. App. Apr. 30, 2009) (holding that appellate review of defense counsel's motion to withdraw was waived by the failure to file a timely motion for new trial); *see also State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994) (discussing that the failure to file a motion for a new trial, the late filing of a motion for a new trial, and the failure to include an issue in a motion for a new trial results in waiver of most issues on appeal, even if meritorious). Accordingly, as the Defendant withdrew his motion for new trial before any ruling was made on its merits and no subsequent or amended motion for new trial was filed containing this issue, the issue is waived. Furthermore, the Defendant failed to respond to the State's waiver argument regarding this issue in his reply brief, nor did he argue he was entitled to relief under plain error or request such review of this issue. As such, we decline to review the issue for plain error. *See State v. Gardner*, 716 S.W.3d 388, 433-34 (Tenn. Crim. App. 2024) (declining to engage in plain error review when defendant failed to request such relief); *State v. Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 4552193, at *5 (Tenn. Crim. App. July 14, 2023).

### D. Sufficiency of the Evidence

The Defendant alleges that the State's evidence was insufficient to support his conviction for passing a worthless check because the check passed to Mr. Scott was for a pre-existing debt and not for the purpose of inducing services. The State counters that the evidence sufficiently established the Defendant intended to use the check, in part, to induce Mr. Scott to continue providing services, and the Defendant obtained a benefit from Mr. Scott's continued services. In reply, the Defendant merely restates his argument and further alleges that Mr. Scott failed to notify him of the bad check and that the State was required to present evidence corroborating Mr. Scott's testimony pursuant to *State v. Thomas*, 687 S.W.3d 223 (Tenn. 2024).

The United States Constitution prohibits the states from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. A state shall not deprive a criminal defendant of his liberty "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In determining whether a state has met this burden following a finding of guilt, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because a guilty verdict removes the presumption of innocence

and replaces it with a presumption of guilt, the defendant has the burden on appeal of illustrating why the evidence is insufficient to support the jury's verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). If a convicted defendant makes this showing, the finding of guilt shall be set aside. Tenn. R. App. P. 13(e).

"Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Appellate courts do not "reweigh or reevaluate the evidence." *Id*. (citing *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Therefore, on appellate review, "the State is entitled to the strongest legitimate view of the trial evidence and all reasonable or legitimate inferences which may be drawn therefrom." *Cabbage*, 571 S.W.2d at 835.

As relevant to this appeal, a person commits an offense who, "with fraudulent intent or knowingly . . . passes a check" for the payment of money "for the purpose of obtaining money, services, labor, credit or any article of value, knowing at the time there are not sufficient funds in or on deposit with the bank" for the payment in full of the check. Tenn. Code Ann. § 39-14-121(a)(1)(A). "[F]raudulent intent or knowledge or both of insufficient funds may be inferred if" the person had no account with the bank at the time the person passed the check or on presentation within thirty days after passing the check, payment was refused by the bank for lack of funds, insufficient funds or the account closed after passing the check, and the passer failed to make good within ten days after receiving notice of that refusal. *Id.* § -121(b). Importantly, the offense is not the failure to pay the check after notice but "passing the instrument with the *then present intent* to defraud." *State v. Stooksberry*, 872 S.W.2d 906, 907 (Tenn. 1994) (emphasis added) (citations omitted). Thus, while the statutory inference creates one method of establishing the existence of knowledge or intent, it is not the exclusive method. *See State v. Merriweather*, 625 S.W.2d 256, 258 (Tenn. 1981); *Stines v. State*, 556 S.W.2d 234, 235 (Tenn. Crim. App. 1977). Furthermore, determining whether a defendant had fraudulent intent or knowledge in passing a worthless check is a matter for the jury. *See Jett v. State*, 556 S.W.2d 236, 238 (Tenn. Crim. App. 1977).

The statute "addresses a narrow factual situation, *i.e.*, where the maker of a check . . . obtains something of value by the fraudulent use of the instrument." *Stooksberry*, 872 S.W.2d at 907. In *State v. Newsom*, a panel of this court explained that

where the statute specifies the obtaining of something of value as an element of the offense, the giving of a worthless check in payment of a pre[-]existing debt is not a violation of the statute. Since the debt remains unpaid the maker of the check did not obtain anything of value from the payee and did not give the check with intent to defraud.

684 S.W.2d 647, 649 (Tenn. Crim. App. 1984). Thus, "if the worthless check is given in payment of a pre[-]existing debt, nothing else appearing, there is no fraudulent intent." *Id.*

First, we note that the Defendant included additional arguments in his reply brief regarding Mr. Scott's failure to notify the Defendant of the bad check and the State's failure to present corroborating evidence of Mr. Scott's testimony concerning the bad check. A reply brief allows the appellant to "reply to the brief of the appellee." Tenn. R. App. P. 27(c). "A reply brief is limited in scope to a rebuttal argument advanced in the appellee's brief." *Caruthers v. State*, 814 S.W.2d 64, 69 (Tenn. Crim. App. 1991). As such, an appellant cannot abandon an argument advanced in his or her principal brief and advance a new argument to support an issue in the reply brief because such practice would be fundamentally unfair to the appellee, who is unable to respond in kind. *Id.* As such, we will address only those arguments set forth in his principal brief.

The Defendant argues that the $25,000 check passed to Mr. Scott was for a pre-existing debt and does not qualify as the criminal offense of passing a worthless check. Although we agree that the $25,000 check was passed to Mr. Scott after he began work on the Marina, Mr. Scott inquired about needing payment after working over a two-to-three-week period. Mr. Scott had communicated with the Defendant over text message about the costs and estimated he had completed $1,000 worth of services. Thus, the pre-existing debt at this time was $1,000. The Defendant gave the $25,000 check to Mr. Scott, and Mr. Scott continued to work at the Marina. It was only once the check failed to clear that Mr. Scott stopped working. Contrary to the Defendant's assertion, Mr. Scott testified that he informed the Defendant that the check did not clear, and Mr. Scott confirmed that he never received any payment for his services prior to or after receiving the check. Additionally, Special Agent Hodgins stated that, on the day the Defendant passed this check to Mr. Scott, the Defendant had only $443 in his bank account, and after reviewing two years' worth of the Defendant's bank records, he posited the Defendant would have been unable to pay Mr. Scott the $25,000. We, therefore, conclude that the $25,000 check passed by the Defendant to Mr. Scott was not solely for a pre-existing debt but that it was for the further purpose of inducing additional services. *See Newsom*, 684 S.W.2d at 649 (holding fraudulent intent was proven for the conviction of passing a worthless check when the defendant passed the check for the purpose of paying a

pre-existing debt and for the further purpose of obtaining additional credit); *see also State v. White*, 649 S.W.2d 598, 601 (Tenn. Crim. App. 1982) (holding the evidence showed the defendant knew at the time the check was passed that she did not have sufficient funds to cover the check). The Defendant is not entitled to relief.

### E.      Affirmative Defenses

Next, the Defendant alleges that his due process rights were violated when the trial court initially granted his motion to present affirmative defenses at trial but later ruled "in chambers" that these defenses could not be presented. According to the Defendant, he sought to present affirmative defenses of the existence of a pre-existing debt, his having the right to "remov[e]" compensation because Mr. Scott committed a crime during maritime activity, and the existence of a federal lawsuit seeking repossession of the Marina's assets prior to the Defendant's filing a UCC financing statement. The State argues the issue is waived due to the Defendant's failure to prepare an adequate record. In his reply brief, the Defendant responds only that he had a legal basis to file the lien, which he could have presented if the trial court had allowed the presentation of the federal lawsuit and when the federal lawsuit was filed. However, he concedes that the trial court did not make its ruling regarding presentation of the federal lawsuit on the record, he argues that "[t]he fact that the pre-trial motions do not appear in the record do[es] not dismiss the fact that such motions were made and granted."

We agree with the State that the Defendant failed to include in the appellate record any transcript or order reflecting that the trial court prevented him from presenting such defenses. *See* Tenn. R. App. P. 24(b) ("[T]he appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal."). "When the record is incomplete, or does not contain the proceedings relevant to an issue, this [c]ourt is precluded from considering the issue . . . [and] must conclusively presume that the ruling of the trial court was correct in all particulars." *State v. Stack*, 682 S.W.3d 866, 876 (Tenn. Crim. App. 2023) (citing *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987)). Additionally, despite the State's argument regarding the inadequacy of the record, the Defendant did not move this court to supplement the record with the missing transcripts or documents. *See* Tenn. R. App. P. 24(e) (permitting correction or modification of the record); *State v. Rhoden*, 739 S.W.2d 6, 14-15 (Tenn. Crim. App. 1987) (noting that, when a defendant discovers a deficiency in the record, it is his or her responsibility to take steps to supplement the record or to show his or her inability to prepare the required supplementation); *see also Matthews*, 805 S.W.2d at 784. Rather, the Defendant merely restated his argument that the federal lawsuit provided a reasonable

basis to file the lien and failed to respond at all to the State's response to his arguments regarding a pre-existing debt and Mr. Scott's alleged criminal activity. As such, we presume the trial court's ruling in this regard was correct. Further, as the Defendant withdrew his motion for new trial, his due process argument is considered waived. *See State v. Britton*, 710 S.W.3d 177, 203 (Tenn. Crim. App. 2025) (holding the defendant's due process argument waived when it was not included in his motion for new trial).

Moreover, we note the record reflects that when defense counsel argued that the federal lawsuit was relevant as to the fraudulent lien charge and that he was planning to introduce only the existence of a lawsuit and the date it was filed, the trial court permitted defense counsel to cross-examine Mr. Tate on this matter. Defense counsel then argued during closing argument that such lawsuit provided a reasonable basis to file a lien. Additionally, defense counsel cross-examined Mr. Scott regarding when he began repairs on the Marina and when the check was passed and then argued during closing argument that the check was passed to Mr. Scott after services began and not to induce further services. Thus, the jury heard these arguments and rejected them, as was its prerogative. *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). The issue is without merit.

### F.    *Brady* Issues

On appeal, the Defendant asserts that the State committed two *Brady* violations concerning the ownership of the Marina. First, he alleges that the State withheld a 1997 "jurisdiction agreement" between the State of Tennessee and the TVA indicating the TVA held exclusive jurisdiction over the Marina. Second, he asserts that the State withheld documents pertaining to the property's history showing it was "federal territory," and as such, the State's case was "based upon *Giglio*[3] testimony from its alleged victim [Mr.] Fronabarger and [S]tate's witness [Mr.] Tate." The State responds this issue is waived because the Defendant failed to file a motion for new trial. In his reply brief, the Defendant argues these issues are not waived because this court directed the Defendant to raise his *Brady* claims in his appellate brief, and these *Brady* violations were discovered only after the deadline to file a motion for new trial had passed. To this point, the Defendant argues that his obligation was to notify the court "as soon as practical[] upon learning of the violations."

### 1.    Pertinent Facts

On September 20, 2024, five days prior to the trial court's striking the Defendant's motion for new trial, the Defendant filed in this court a "Motion To Incorporate Post

---

[3] *Giglio v. United States*, 405 U.S. 150 (1972).

Judgement Facts Into Record" pursuant to Tennessee Rule of Appellate Procedure 14. In this motion, he raised his *Brady* claim regarding the jurisdiction agreement and stated such evidence was discovered on December 19, 2023, two months after the conclusion of his trial. He attached the jurisdiction agreement to the motion. This court denied the Defendant's Rule 14 motion and explained, both therein and in a subsequent order pertaining to the Defendant's appeal of the denial, that the Defendant's claims related directly to the merits of the appeal and were not proper matters to be considered pursuant to Rule 14, but rather must be presented in an appellate brief. Additionally, in his appellate brief, the Defendant again noted he discovered the jurisdiction agreement on December 19, 2023.

## 2. Relevant Law and Analysis

Here, we agree with the State that both of the Defendant's *Brady* arguments are waived. Failing to file a motion for new trial or include certain issues in a motion for new trial generally results in waiver of those issues on appeal. *See Keel*, 882 S.W.2d at 416. As the Defendant failed to make any objections regarding a *Brady* violation at trial and withdrew his motion for new trial, these issues are waived. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *State v. Shumacker*, No. E2019-01297-CCA-R3-CD, 2021 WL 684877, at *9 (Tenn. Crim. App. Feb. 23, 2021) (waiving a *Brady* issue when the defendant failed to raise the issue in the trial court and in his motion for new trial). Nonetheless, we note that the Defendant, in both his September 20, 2024 motion and in his appellate brief, claimed to have discovered the jurisdiction agreement in December 2023, nearly nine months prior to the deadline to file his motion for new trial. Furthermore, the documents pertaining to the property's history are appended only to the Defendant's brief. *Best*, 708 S.W.2d at 423; *Matthews*, 805 S.W.2d at 783-84; Tenn. R. App. P. 13(c). The Defendant is not entitled to relief.

## G. Sentencing

The Defendant contends that his sentences are excessive because the trial court imposed sentences greater than the statutory minimum and that his sentences are illegal because the trial court failed to cite the victims for each count, failed to order restitution,

and took no action to remove the lien.[4]  The State responds that these sentencing issues are waived due to the Defendant's failure to include a transcript of the sentencing hearing in the appellate record.  In his reply brief, the Defendant asserts that the State's argument is moot and that he "is not responsible for the assembly and transmission of the record to this [c]ourt[.]"

Here, we agree with the State that the Defendant has waived his sentencing issues by failing to include a transcript of the sentencing hearing in the record on appeal.  Tenn. R. App. P. 24(b) (providing that it is the appellant's duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal"); *see State v. Rimmer*, 623 S.W.3d 235, 296-97 (Tenn. 2021) (holding sentencing issue waived when defendant failed to include transcript of sentencing hearing).  Furthermore, in the absence of a record, an appellate court must presume the trial court's ruling was correct.  *See Rimmer*, 623 S.W.3d at 296-97 (first citing *State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993); and then citing *State v. Ivy*, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993)).

The Defendant also alleges that the State's waiver argument is moot because the Office of the Attorney General had already conceded that the Defendant's sentence was illegal.  To this point he states that he filed a "Writ of Certiorari for Declaratory Order in Bledsoe County Chancery Court" in case number 25-3649, which went unopposed by the State and argues this qualifies as an admission by a party-opponent under Tennessee Rule of Evidence 803(1.2).  This court is uncertain how a pleading in Bledsoe County Chancery Court implicates this Hardin County criminal case, and the Defendant provides no clarification and has failed to supplement the record with any supporting documentation.  *See* Tenn. R. App. P. 24(b).  Accordingly, the issue is waived.

### III.   CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

 s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE

---

[4] In his appellate brief, the Defendant additionally stated he was challenging his sentences because the trial court allowed a witness to be coerced during the sentencing hearing.  The Defendant, however, failed to include any argument or supporting authority for this issue.  Accordingly, the issue is waived.  *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b).